No. 14,083.

## THE PENNSYLVANIA COMPANY v. PLOTZ.

DEDICATION.—*What Does Not Constitute.*—*Streets and Alleys.*—*Railroad.*—*Abutting Property Owner.*—*Injunction.*—Where a railroad company desired to have a portion of an alley vacated in order to build a passenger depot, and presented a petition to the common council offering to donate to the city a certain strip of ground to be used as a street or alley in consideration of the vacation of the said alley, and the city, through its proper officers, rejected the proposition of exchange by failing to act thereon, but assessed the benefits to the company growing out

of the vacation of the said alley at a certain sum, which sum was paid by the company into the city treasury, and afterwards the company, for the purpose of making a convenient and necessary way of approach to, and egress from, its passenger depot, curbed and paved the strip of ground which it had proposed to donate to the city, and constructed convenient and necessary gates, all of which was done at its own expense, the said strip of ground did not become a public street of the city, subject to a right of all the citizens to use it as a public thoroughfare. An abutting property-owner could not enjoin the company from erecting a fence along the boundary of said strip of ground.

SAME.—*Proposition to Dedicate.—Not Acted Upon.—Effect of.*—No rights accrued to the public on account of the proposition contained in the petition of the. railroad to the common council. Inasmuch as only the matter of vacating the alley was acted upon and referred to the city commissioners, everything relating to the opening of a new street must be deemed to have been abandoned. A mere proposition, or offer, on the one hand, not acted on or accepted, is not a contract.

SAME.—*Use of Ground By Owner's Permission.—When Does Not Constitute Dedication.*—One who devotes a portion of his land for use as a way of travel for his own convenience and accommodation, will not be deemed to have dedicated it to the public simply because the public also use the way with the land-owner's permission.

From the Floyd Circuit Court.

*S. Stansifer,* for appellant.

*J. V. Kelso* and *C. D. Kelso,* for appellee.

MITCHELL, C. J.—The undisputed facts presented by the record are that on and prior to the 15th day of March, 1886, the Jeffersonville, Madison and Indianapolis Railroad Company was the owner of lots 6, 7, 8 and 9, in the city of New Albany; lots 7 and 9 fronted on State street, while lots 6 and 8 abutted on Pearl, or Upper First street, the direction of both streets being north and south. An alley running north and south bounded the lots at the rear end.

The railroad company, desiring to erect a new passenger depot on lots 6 and 7, both of which lay south of lots 8 and 9, presented a petition to the common council of the city; in which the council was asked to order the vacation of the south seventy feet of the above mentioned alley. The peti-

tion presented by the railroad company embodied the following proposition :

" In consideration of the permanent vacation of said part of said alley, the Jeffersonville, Madison and Indianapolis Railroad Company offer to, and will, donate to the city of New Albany, to be used as a street or alley, a strip of ground thirty feet wide and two hundred and forty feet long, between State street and Pearl, or Upper First street, and connecting said streets, being the north thirty feet of lot No. 9, on State street, and the north thirty feet of lot No. 8 on Pearl, or Upper First street."

The petition having taken the regular course, the city commissioners reported that the value of the land upon which the part of the alley proposed to be vacated was situate, was $500, and that the railroad company would be benefited a like amount by the proposed vacation. A number of lot owners, alleged to be all those interested in the proposed vacation, appeared before the city commissioners, waived notice of the proceedings, and consented in writing that the alley be vacated. The report of the city commissioners was received by the common council, and it was thereupon duly ordained that the railroad company should pay into the city treasury the sum of $500, the amount of benefits assessed, together with all the expenses of the proceeding, and that the south seventy feet of the alley should thereupon be vacated. No reference was made in the report of the city commissioners, or in the proceedings of the common council, or elsewhere, to the proposition of the railroad company to donate the strip of ground described in its petition, in consideration of the permanent vacation of the part of the alley vacated. The railroad company paid the $500 assessed against it, as benefits, into the city treasury, and proceeded to build its passenger depot, in part, upon the ground previously occupied by the vacated alley, and for the purpose of making a convenient and necessary way of approach to its depot the company levelled and paved the strip of

The Pennsylvania Company *v.* Plotz.

ground extending from State to Pearl streets, which it had proposed to donate to the city, and constructed convenient and necessary gates, all of which was done at its own expense. The strip of ground was afterwards called Black avenue.

The appellee Plotz charges that he is the lessee of lot 10, lying immediately alongside of Black avenue, over which, he alleges, lies the only way of approach to his coal-yard, situate on the above mentioned lot. He avers that the railroad company is proceeding, without right, to erect a fence along the boundary of Black avenue, which he alleges is a public street, thereby depriving him of ingress and egress to and from his coal-yard. He asked and obtained an injunction. It was shown that Black avenue had been paved by the company in a manner suitable for carriages and vehicles, such as would ordinarily be used in carrying passengers and baggage to and from the depot, and that it was the only way of approach to the depot with vehicles. It also appeared that while the public used the avenue without objection from the railroad company, it was opened solely and principally used as a way of approach to and egress from the depot, and that the railroad company after its proposition to donate the ground in consideration of the vacation of the alley had been rejected, never did, nor intended to dedicate the ground to the public for use as a public street, unless the filing of the petition as above mentioned, and the use of the ground by the public as hereinbefore stated, constituted a dedication to the public. Nor did it appear that the city of New Albany had ever done any work or expended any money upon the strip of ground in controversy, or that it had in any other manner accepted it as a public street, unless the proceedings and order vacating the alley as above constituted an acceptance of it.

The question is whether or not, upon the foregoing facts, the strip of ground in controversy became a public street of the city, subject to a right of all the citizens to use it as a

public thoroughfare.   If it did, it is clear the railroad company had no right to maintain a fence parallel with the street, so as to prevent adjoining property-owners from using it as streets are customarily used.   If it did not become a public street, it is equally clear that while it is the duty of the company to keep it open and in condition to be used by the public in its relations with the railroad company, it can not be required to keep it open as a public street, or as a means of access to and egress from the appellee's coal-yard. Now upon what does the appellee predicate his right to use the ground as a public street?   Upon no other than that the railroad company, in consideration of the benefits which would result to it from the vacation of seventy feet off the end of an existing alley, proposed in its petition to donate a strip of ground thirty feet wide and two hundred and forty feet long to the city to be used as a public street. To this is added the further claim, that by opening the way and preparing it as a means of access to its depot, and permitting its unrestricted use by the public, the railroad company thereby actually dedicated the ground to the public as a street.   The record presents no ground upon which either of the above claims can be sustained.

The common council, in referring the matter embraced by the petition to the city commissioners, gave no directions to them to ascertain the value of the land proposed to be donated to the city by the railroad company, nor was this latter body directed to inquire into the propriety of the proposed exchange.   The council doubtless arrived at the very reasonable conclusion that as the only way of approach to the company's passenger depot was over the strip of ground in controversy, it was not necessary for the city to take upon itself the burden of doing that which the railroad corporation would itself be obliged to do.   Accordingly the city commissioners assessed the value of the land which would be transferred to the railroad company, and the benefits which it would derive from the vacation of the alley, with-

out any reference to the proposed donation of ground for a new street. The common council afterwards, with the report of the commissioners, and the proposition of the railroad company before it, ordered that the alley should be vacated, and that the railroad company should pay into the city treasury the sum of $500, the amount of benefits assessed to it, together with the expense of the proceeding. This was an effectual rejection of the proposition made by the railroad company. It is clear that no rights accrued to the public on account of the proposition contained in the petition of the railroad to the common council. If the common council had considered the proposition to vacate the alley on the terms stated in the petition favorably, both the matter of opening the new street proposed by the petition, as well as that of vacating the alley, could, and doubtless would, have been referred to the city commissioners. The petition necessarily embraced both subjects. Inasmuch, however, as only the matter of vacating the alley was acted upon and referred to the city commissioners, everything relating to the opening of a new street must be deemed to have been abandoned. A mere proposition, or offer, on the one hand, not acted on or accepted, is not a contract. *Wright* v. *Griffith,* 121 Ind. 478.

The subsequent conduct of the city officials, as well as that of the railroad company, corroborates this view. The railroad company, at its own expense, opened a passage-way from one street to the other, and prepared it, by paving and otherwise, as a necessary means of accommodating the public in going to and from its depot. So far as appears by this record the city never has asserted any right to, or acknowledged any duty in respect to, the ground in controversy as a public street. It would hardly be claimed, if the place became dangerous, that the city would be liable to any one who suffered an injury on that account, while travelling over this ground.

The appellee can not coerce the city and the railroad com-

pany into a relation which we must assume from the record both had under consideration, and which both declined to enter into, the city by refusing to consider the proposition to accept ground for a new street, and the company by paying the benefits assessed in money, and by preparing the way to its depot at its own expense.

The fact that the railroad company paved the strip of ground, and prepared it for the uses already indicated, did not amount to a dedication of the ground to the public for use as a street. To hold otherwise would be in effect to affirm that a dedication to the public occurs whenever a railroad company opens and prepares a convenient way over its own ground. As a matter of course, the public have rights in respect to the use of the ground, but only as the use is in some way related to travel or traffic with the railroad company. The principle that ruled in *Talbott* v. *Grace*, 30 Ind. 389, is controlling here. It was there held that a land-owner whose lands abutted upon a navigable river, and who had permitted boats to land, and freight to be unloaded upon his land, did not thereby dedicate the land to the public. This is upon the principle that one who devotes a portion of his land for use as a way of travel for his own convenience and accommodation, will not be deemed to have dedicated it to the public simply because the public also use the way with the land-owner's permission. *Shellhouse* v. *State*, 110 Ind. 509.

We conclude, therefore, that the public acquired no right to use the ground in controversy as a public street, in consequence of the proposition contained in the appellant's petition ; and that the ground was neither dedicated to, nor accepted by, the public.

We discover nothing in the record upon which the appellee can justly predicate an estoppel. The court erred in overruling the appellant's motion for a new trial.

Judgment reversed, with costs.

Filed May 2, 1890; petition for a rehearing overruled Sept. 19, 1890.