PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY *v.* THE TOWN OF CROWN POINT ET AL.

[No. 18,105. Filed May 24, 1898.]

DEDICATION.—*Adverse User.*—*Railroads.*—*Highways.*—Lands appropriated to one public use are not, in the absence of statutory authority, subject to condemnation for another and inconsistent public use; but since a railroad company may voluntarily part with lands thus held, it may waive such protection, and thereby become estopped from setting up such right after the surrender of lands to the easement of a street or highway from adverse user. *p. 547.*

SAME.—*Easement by Prescription.*—*Highways.*—*Municipal Corporations.*—The application to cities and towns of the statute, section 5035, Burns' R. S. 1894, providing that a way used for twenty years as a highway shall be deemed a public highway, is not indispensable to the conclusion that ways used as streets for twenty years may become public streets from such use, as, strictly speaking, the doctrine of prescription does not apply to the acquirement of highways, but the user in the case of a street or highway, which, as between individuals, would constitute an easement by prescription, is evidence of a dedication or of a condemnation. *pp. 547–551.*

SAME.—*Highways.*—*Presumption as to Dedication.*—*Municipal Corporations.*—Where a way connecting two streets of a town has been in use by the public as a highway for thirty years; was ditched and graded by the authorities of the town, and cared for during such time in the same manner as other streets of the town were cared for; was so far regarded by the citizens and property owners as a public street that residences and business houses were constructed on the streets connected by it, without which such streets would

have had no outlet at their northern termini, and a livery stable was maintained near such way for years with its only entrance from such street, such facts raise the presumption of the dedication of such way to the public use.  *pp. 551, 552.*

DEDICATION.—*Highways.—Use by Owner.*—Where the public used a way for travel for thirty years across lands belonging to a railroad company, and graded and cared for the way in the same manner that other streets and highways were cared for, the fact that the railroad company used the way in going to and returning from their depot would not affect the presumption that there was an intention to dedicate the way to the public.  *pp. 552, 553.*

SAME.—*Adverse User.— Disability.— Presumption.— Highways.*— It will be presumed, in the absence of any showing to the contrary, that the owner of lands dedicated to the public as a highway was under no legal disabilities.  *pp. 553, 554.*

SAME.—*Adverse User.—Lease of Lands Dedicated.*—The fact that lands were leased for a term of ninety-nine years, and were out of the possession of the owner, would not bar the acquirement by the public of an easement, by an implied dedication, in such lands for a street.  *p. 554.*

STREET IMPROVEMENTS.—*Action to Enjoin Collection of Assessments.— Municipal Corporations.*—An action to enjoin the collection of assessments made against property owners for street improvements is a collateral attack upon the proceedings of the town board, and can be maintained only by the affirmative disclosure of some act or omission rendering the assessments invalid for the want of jurisdiction, and it cannot be sustained for any mere irregularity in the proceedings.  *p. 554.*

SAME. — *Petition by .Property Owners.* — Street improvements are authorized upon a vote of two-thirds of the membership of a board of town trustees without a petition by the abutting property owners.  *p. 554.*

SAME.—*Ordinance.*—A recital in an ordinance for street improvements that the same was passed by a two-thirds vote of the board, amounts to a finding upon such fact, and is conclusive against a collateral attack.  *p, 555.*

From the Lake Circuit Court.  *Affirmed.*

*N. O. Ross* and *G. E. Ross,* for appellant.

*C. N. Morton* and *J. W. Youche,* for appellees.

HACKNEY, C. J.—The appellant sought to enjoin the appellees from constructing a pavement upon certain ground claimed by the appellant to belong ex-

clusively to it, and as forming a part of its depot and station grounds at Crown Point.

The case was tried by the court and resulted in a special finding of facts, with conclusions of law stated and excepted to, and a judgment in favor of the appellees. There is no question but that the fee in the way in dispute is in the appellant, but the points of contention are as to whether the way became a public street by user or by dedication, and whether the proceedings of said town for the paving of said way were valid.

The facts specially found are substantially as follows: In the year 1865, the then owners of the land, duly laid out and platted the same as Railroad addition to the town of Crown Point; which plat was duly acknowledged and recorded, and which territory is now and ever since has been within the corporate limits of said town. At about the same time the Chicago & Great Eastern Ry. Co. located and constructed its railroad in the middle of its right of way through said Railroad addition, said road running diagonally through said addition in almost an exact northwesterly and southeasterly direction. The width of said right of way from the point where said road enters said Railroad addition for a distance of about 400 feet along said line of road in a northwesterly direction is 50 feet on each side of the center of the track; from this point on, along said line of railroad, for a distance of about 1125 feet, the width of said way is increased to 150 feet on each side of the center of said track, and from thence on through said addition it is again only the width of 50 feet on each side. Goldsborough street in said addition runs from west to east to and beyond said widened part of appellant's right of way, but not over the same; and Jackson street runs from south to north to and beyond,

but not through, said right of way.  At the time said
railroad was so constructed, said company located its
depot at Crown Point on the southwesterly side of its
tracks upon said widened part of said right of way in
said Railroad addition, at a point nearly on a line
with Goldsborough street extended east, and Jackson
street extended north.  Said depot was a large frame
structure, close to the main track, and extending
southwestwardly therefrom about 40 feet.  During
the year 1865 the owners of the land upon which
Railroad addition was afterwards located, conveyed
to said railroad company, by deed, the said strip of
land through said addition, along which said railroad
was located, including the widened part thereof, and
afterwards appellant acquired the legal title to said
right of way and to said widened strip of land in said
addition.  Soon after said railroad and depot were
constructed, and not later than 1866, said company
built and for many years thereafter maintained an
elevated walk alongside and to the rear of said depot
building, extending forty or fifty feet beyond each
end thereof, about 100 feet in length, and running
parallel with said railroad track, and was used in
connection with said depot, separating it from the
depot ground lying to the rear thereof.  Said depot
and walk existed and were maintained by said rail-
road company from the year 1865 or 1866 until about
1886, when they burned down; and thereupon said
company constructed a new depot upon nearly the
same site, and said latter building still remains.  Said
railroad, with its switch, sidetracks, depot and freight
house, are now as they have existed since 1886.
Shortly after said railroad was constructed, said
Goldsborough street, and also Jackson street, began
to be and were used extensively and constantly by the
public generally for travel and passage in such man-

ner as public streets are ordinarily used. During the year 1866, the public in traveling and passing north on said Jackson street, were in the habit of passing north on the line of said street, extended, to the rear of said depot building, and from thence west in a straight line to said Goldsborough street; and they likewise traveled and passed along said Goldsborough street, extended, to the rear of said depot, and to the line of Jackson street, extended, and thence south to and upon said Jackson street; and during said year the route so used by such travel became well worn and marked; and such travel was constantly substantially upon the same route, without material deviation therefrom, and continued along the same during 1865, 1866 and 1867. During the year 1867 the town marshal of Crown Point, who then had supervision of the streets of said town, in his official capacity caused said route of said travel to be graded, worked, and improved as a public street of said town, by digging ditches on each side thereof and throwing the excavated earth between them, thus forming an elevated roadway, which roadway was so constructed by him from the east end of Goldsborough street, eastwardly, in the rear of said depot, to the north end of Jackson street, substantially upon the route of travel which had been before that time so used by the public; which said roadway was situated wholly upon said depot ground, to the rear and alongside of said depot and walk, and formed a connecting roadway between said streets. From 1867 until the commencement of this suit said roadway was constantly and continuously maintained, substantially upon said place and route, and during each of said years was worked and improved its entire length to the width of 30 feet by the public authorities of said town, at public expense, as a street of the town of Crown Point, said work consisting of

ditching alongside of said roadway and scraping the earth towards the center thereof, and maintaining an elevated roadbed or grade suitable for public passage or travel with all kinds of vehicles; and during all of said time the streets and roads of said town in the neighborhood of said roadway in controversy were usually worked upon and improved by the public authorities of said town twice each year, in the spring and fall; and during said time said roadway in controversy was worked, improved, and treated by the public highway authorities of said town the same as other streets of said town in that neighborhood, and there was not a single year since 1867 during which no road work was done by the public authorities of said town upon said roadway in controversy. Beginning with the year 1866, the public has constantly, continuously, and without interruption used the said roadway, so constructed as aforesaid, for public travel in all the ways in which public streets are ordinarily used therefor; much of said use during all of said time consisting in daily travel of persons coming from the south along said Jackson street and going to the said depot to transact freight and passenger business there, and also by persons coming along said Goldsborough street and going east thereon for said like purpose to said depot, but a large amount of the travel on said roadway was by persons daily, during all of said time, in passing north on said Jackson street to said Goldsborough street, and east on said Goldsborough street to Jackson street, and in so doing, passing over said roadway in controversy, without going to or having any business with the said railroad company, or at said depot; but said company or its predecessors have done no affirmative act, aside from acquiescence, to establish said way as a street. Said roadway in controversy has continuously, during the past thirty

years, been one of the most constantly and frequently used roadways of said town, and the public travel upon, along, and over said roadway has so continued without interruption, and has been in daily use by the public for public travel thereon from the year 1866 to the commencement of this action, and during all of said years it has been the ordinary and most frequently used route of travel between Goldsborough and Jackson streets, and to and from said depot, the said streets being the routes to reach the same; such travel has been open, notorious, and visible, and the work and improving done has been likewise open, notorious, and visible, and the station agents of appellant and all its predecessors in title and ownership, have constantly had full notice and knowledge of said travel and improvement, but neither appellant nor its predecessors have ever prevented or attempted to prevent, or made any objections to the public improvement or public use of said roadway for travel as aforesaid. From 1865 to 1870 that part of railroad addition lying on each side of said right of way and depot grounds was mostly built up and improved as urban property, and dwelling houses and business buildings were erected by their owners upon all the lots on each side of Goldsborough street, and also on Jackson street, all of which buildings and improvements still exist. About 1866 a large livery barn or stable was built upon lots 5 and 6 in block 17 in said addition, facing upon the said roadway, and the same was from that time on, with some interruptions, used to carry on the livery business, and during all of said time the only access to and from said livery stable was upon, along and from the said roadway in controversy, and the residents and people owning and doing business in the buildings along said Goldsborough and Jackson streets have constantly used said road-

way in passing to and from their said residences and places of business on said streets. Neither appellant nor any of its predecessors either built or maintained any fence or other enclosure around its said depot grounds, but since 1866 or 1867 a fence has been maintained by the owner of said lots 5, 6, and 7, in block 17, in said addition, parallel with and along the southwesterly side of the said roadway in controversy, as so located and traveled as aforesaid. That since 1866 until the commencement of this suit, the public road authorities of said town have constantly claimed and believed that said roadway was one of the public streets of said town, and under and with that belief the public road work was by them done on said roadway as aforesaid. Since said time said roadway has been used for public travel without asking the permission of appellant or any of its predecessors, but such public use has been adverse to the rights of appellant and its predecessors, and under a claim of right. Said appellant did not, nor did any of its predecessors, ever use or attempt to use the place where said roadway is located for railroad purposes, except that its servants, as a matter of convenience in going to and from their work at the depot, used the same as the rest of the public did; and that said roadway in no manner interferes with the operation, use or necessities of the appellant in the operation of its railroad. All side and switch tracks of said railroad are and always have been located upon the easterly side of the main track thereof, and appellant has an abundance of room and ground outside of the limits of said roadway to accommodate all its railroad uses and purposes, and to transact its railroad business at present; that said roadway accommodates public travel in said town, as well as the public access to and from appellant's depot, and in no

way interferes with the use of said railroad or depot. While said appellant and its predecessors did not actually have the subjective intent to dedicate, yet they have so acquiesced in the use of the way, with a knowledge of all the facts aforesaid, and with the result that the town authorities have in good faith made the improvements aforesaid, and expended their money therefor, that in justice and ·good ,conscience appellant ought not now to be heard to aver its want of intent to dedicate, but it should be charged, as against said town and the public, with an intent to dedicate. The court finds as an inference of fact, from the facts aforesaid, that the way and place in controversy, at the commencement of this suit, had become and was one of the public streets of said town of Crown Point.

The court further finds that on the 5th day of February, 1894, the board of trustees of the town of Crown Point met in regular session at the town hall, with all members present, and ordained that the public street and highway extending from Jackson to Goldsborough street be named and known as "Railroad street," and declaring an emergency. The court further finds that what is termed Railroad street in said ordinance, is the strip of land or highway in this case, and that the same now is, and for more than twenty-five years last past has been, within the limits of the said town of Crown Point; that on February 12, 1894, the board of trustees of said town met in special session, all members being present, and by a two-thirds vote passed an ordinance for the grading and paving with cedar posts to the width of 21 feet numerous other streets, and also Railroad street from Jackson to Goldsborough, declaring such improvement necessary; that the cost thereof be assessed against and collected according to the provisions of the act

of March 4, 1889; that said improvement should be made under the supervision and to the satisfaction of the board of trustees and the civil engineer of said town, and in accordance with the plans and specifications on file in the office of the town clerk; ordering said clerk to give ten days' notice of the passage of said ordinance to property owners along the line; to reduce any objection to the necessity for the construction to writing, and file same with said clerk by 7 o'clock p. m. on March 26, 1894; providing that said clerk shall advertise for three successive weeks that sealed proposals, with bond, will be received up to 1 o'clock p. m. of May 1, 1894, and will be opened and passed upon at a special meeting held May 5, 1894; ordering the civil engineer of said town to set proper grade stakes, prepare profile showing correct grades, excavation, location, depth and size of drains, etc., declaring an emergency. The court further finds that said clerk and civil engineer, in accordance with the requirements of said order, did the things therein required of them in the manner so directed. That on April 2, 1894, said board of trustees met in regular session with all members present, it being shown to their satisfaction that said clerk had given the required notice to property owners to reduce their objections to writing and file the same on or before 7 o'clock p. m. of March 26, 1894, no such objections having been filed, said board was still of opinion that public necessity required such improvement. On May 5, 1894, said board met in regular session, with all members present, it appearing to their satisfaction that the required notice had been given for bids for the construction of said work, the propositions of various bidders were received and considered, and appellee, Garden City Paving and Post Company, mak-

ing the lowest and best bid, in proper form, and being accompanied by the proper bond, same was accepted, and said company ordered to enter into a contract with said town in fifteen days from said date; which contract was made and entered into by said board, in special session, with all members present, on May 15, 1894, at the price of $1.40 per square yard, which contract was in writing and signed by both parties. On August 29, 1894, said board met in special session, with two of their members present, and the town engineer filed his final report and estimate of the cost of the pavement of Railroad street, as theretofore ordered, and it appearing that the work on said street was complete, it was accepted by said board, and said estimate was referred to a committee on streets and alleys, which committee was ordered to meet at the town hall of said town at 7 o'clock p. m., September 14, 1894, to consider the same; said town clerk was ordered to give the proper notice of the meeting of said committee, at said time, where a hearing could be had; which said notice was duly given. That at said meeting, at said time and place aforesaid, the appellant came and filed its written objections to the assessments made against it. On September 24, 1894, said board met in special session, all members being present, and said committee on streets and alleys aforesaid made their report, wherein they found, that after hearing all objections and recommendations and viewing said improvement, said estimate and report of said engineer correct in every respect and recommending its adoption and confirmation, all of which was done by said board of trustees, and said report was confirmed and approved; and it was further ordered by said board that the amounts stated in said final estimate be assessed against the several lots and parcels of land described therein, for and on account

of said improvement, and how the same should be paid and collected.

One proposition relied upon by the appellant is that, having appropriated land to its right of way and station grounds, no power existed to take, by direct proceedings, any part thereof laterally for a street or public highway, and that, therefore, no right existed to take the same indirectly, as by user or estoppel. It is not doubted that lands appropriated to one public use are not, in the absence of special authority, subject to condemnation for another and inconsistent public use. This case, however, presents no question at variance with this doctrine. The question here is, can a railroad company, holding property for the uses of a railway, part with the same for another public use? That it may do so by express grant is not doubted; that the doctrine urged is for the protection of the holder of the first public use is certain; that the railroad company may waive this protection seems equally certain; and if it may, just why the company is not bound by the principles of waiver and estoppel under which the individual may surrender his lands to the easement of a street or highway arising from adverse user, it is difficult to see. That one public use may be lost by user or dedication to another has been directly decided. *Board, etc.,* v. *Huff,* 91 Ind. 333; *Easley* v. *Missouri-Pac. R. W. Co.,* 113 Mo. 236, 20 S. W. 1073; *Turner* v. *Fitchburg R. R. Co.,* 145 Mass. 433, 14 N. E. 627.

It is insisted also that a street or public highway cannot be established by prescription in an incorporated town or city, citing *Tucker* v. *Conrad,* 103 Ind. 349; *Shellhouse* v. *State,* 110 Ind. 509; Elliott on Roads and Streets, p. 138. These authorities have reference to the application of the statute, section 6762, Burns' R. S. 1894 (5035, R. S. 1881), which provides

that a way used for twenty years as a highway shall be deemed a public highway, and the county commissioners may cause it to be described and recorded. The application of this statute to cities and towns is not indispensable to the conclusion that ways used as streets for twenty years may become public streets from such use. There is confusion in the cases, from treating the question of such use in some instances as constituting a way by prescription, and in others as by dedication or by condemnation. Strictly speaking, the doctrine of prescription does not apply to the acquirement of highways. That doctrine has as its foundation the presumption of a grant from the adverse user, and, when applicable, must involve parties capable of making and receiving grants. Where doubts have been expressed as to the application of the doctrine to streets or highways, independent of statute, it has been from the conclusion that the inhabitants of a municipality, those whose use was set up as constituting the right, could not occupy the position of a grantee, as in the case of an individual whose use of a private way may be asserted to constitute an easement by prescription. However, we have no doubt, that, strictly speaking, the user, in the case of a street or highway, which, as between individuals, would constitute an easement by prescription, is evidence of a dedication or of a condemnation. In other words, that which is a prescriptive right, as between those capable of granting and receiving title, is, as between the fee owner and the public, sufficient to raise the presumption of a dedication or a condemnation.

In Angell on Highways (3d ed.), p. 142, it is said: "Prescription, in its more general acceptation, is defined to be 'a title, acquired by possession, had during the time and in the manner fixed by law.' It is

also said that 'a prescription by immemorial usage can, in general, only be for things which may be created by grant; for the law allows prescriptions only to supply the loss of a grant.' Now, inasmuch as the public cannot take by grant, prescription, in its strict sense, has no application to highways. 'As the law now exists in this State,' says Senator Furman, in *Post* v. *Pearsall* [22 Wend. 444], 'and as it has in substance existed ever since the formation of our constitution, the only way that an individual can acquire a right in real estate is by grant, or by an adverse possession of twenty years under a claim of title, in which case the law presumes a grant; and as to the public, the only way in which they can at the common law acquire an easement in the lands of another is by dedication.'" After referring to cases applying the doctrine of prescription to highways, the author continues, "But, more properly speaking, such use, unless by virtue of some statute, is but a fact from which a dedication to the public may be presumed." In *Reed* v. *Northfield*, 13 Pick. 94, 23 Am. Dec. 662, Shaw, C. J., speaking for the court, said: "We think it clear upon principle, that public easements, as well as others, may be shown by long and uninterrupted use and enjoyment, upon the conclusive legal presumption from such enjoyment, that they were, at some anterior period, laid out and established by competent authority." See also Pratt's Law of Highways, p. 36; Tiedeman on Real Property, section 599, and authorities there cited.

Judge Elliott, in his Roads and Streets, p. 133, applies the doctrine of prescriptions to roads and streets, but concedes the doubt of its strict applicability. He denies that the presumption at the foundation of the doctrine is of a grant, when applied to highways, and insists that the presumption is that the way has been "laid out and opened by competent authority."

The difference seems to exist in the presumption to be drawn from the application of the rule to public highways, and not upon the conclusion that the facts which constitute, as to private easements, a way by prescription are accepted in favor of the public and as precluding the owner of the fee from denying the continued use of the way as constituting a public street or highway.

We are to look, therefore, to the facts found to determine whether they authorized a legal conclusion in favor of the appellee on the presumption of a dedication or condemnation. By adverse use alone, the period, it is conceded, must be twenty years, but, it is also conceded, a dedication may be presumed from circumstances, continuing for a much shorter period. There is no disagreement as to the elements constituting adverse user, that it must be by conduct clearly indicating a claim of right, that it must be exclusive, that it must be continuous, with the knowledge of the owner, and without interruption from him.

A common law dedication, or the presumption in favor of dedication or condemnation, operated by way of estoppel *in pais*. Elliott's Roads and Streets, p. 87; Dillon's Municipal Corp., section 628; *City of Cincinnati* v. *White*, 6 Peters 431; *Faust* v. *City of Huntington*, 91 Ind. 493.

There is here no claim to an express dedication, and the facts are to be viewed with reference to an implied intention to dedicate. Of the question of intention, Judge Elliott says, Roads and Streets, p. 92, "The intent which the law means is not a secret one, but is that which is expressed in the visible conduct and open acts of the owner. The public, as well as individuals, have a right to rely on the conduct of the owner as indicative of his intent. If the acts are such as would fairly and reasonably lead an ordinarily

prudent man to infer an intent to dedicate, and they are so received and acted upon by the public, the owner cannot, after acceptance by the public, recall the appropriation. Regard is to be had to the character and effect of the open and known acts, and not to any latent or hidden purpose. If the open and known acts are of such a character as to induce the belief that the owner intended to dedicate the way to the public use, and the public and individuals act upon such conduct, proceed as if there had been in fact a dedication, and acquire rights which would be lost if the owner were allowed to reclaim the land, then the law will not permit him to assert that there was no intent to dedicate, no matter what may have been his secret intent." See, also, *Pittsburgh, etc., R. W. Co.* v. *Noftsger*, 148 Ind. 101. On p. 95 of the same work, it will be seen that the negligence of the owner, having the same effect, is sufficient to work the estoppel supporting the presumed dedication.

The question of an acceptance by the public of the way, has been discussed with reference to its influence upon the conclusion that a dedication will be presumed. Whether that question is of importance, except to determine the duty of the corporation to repair, is of no consequence, since, if essential to a complete dedication, there can be no doubt, upon the findings, of an acceptance.

The findings show unmistakably an uninterrupted use by the public for thirty years, of a well defined way of thirty feet in width, connecting Goldsborough and Jackson streets, through and over the appellant's land. The way was defined by ditching and grading, it was accepted and recognized as a public way, not only by the thirty years of constant travel, but by the action of the town authorities in grading, ditching, and caring for the same, twice each year, in the man-

ner of caring for the streets of said town. It was so far regarded by the citizens and property owners as a public street, that residences and business houses were constructed upon Goldsborough and Jackson streets, which streets, but for the way in question, would have had no outlet at the northern terminus of either, and for thirty years a livery stable was maintained upon lots adjacent to appellant's land, with its entrance upon the way in question. The use of said way, the grading, ditching and care of the same, the construction of buildings with reference to such way, and its use as a public street were with never an objection or question from the appellant.

Counsel for appellant insist that inasmuch as the way was used also by persons having business at the depot, and by the employes of the company operating the railway in going to and returning from their employment, the use of the public, disconnected from the use for railway purposes, was not exclusive. It seems to push the rule of exclusive use too far to require that the owner of the fee may have no part in the use to sustain a dedication or a way by prescription. The case of *Pennsylvania Co.* v. *Plotz*, 125 Ind. 26, cited by counsel, holds that "one who devotes a portion of his land for use as a way of travel for his own convenience and accommodation, will not be deemed to have dedicated it to the public simply because the public also use the way with the landowner's permission." Permission certainly means more than acquiescence, for, to sustain prescription, it must appear "that the owner acquiesced in such use." *Nowlin* v. *Whipple*, 120 Ind. 596, and authorities there cited.

One of the strongest evidences supporting an implied dedication is when the owner constructs the road for the use of the public. If concurrence in the

use would defeat dedication, it would seem also that the more useful the way to the fee owner, and the more extensive his use of it, the less certain an intention to dedicate, and having constructed the road that it might be more useful would be strong evidence that he did not intend to dedicate it to the public. Any use of the way here in controversy by the appellant was not antagonistic to the public use claimed, but was of the same character and consistent with it.

When we get back to the primary question, in determining whether a way has become a public road or street by dedication, we must ascertain the intention of the owner. To ascertain that intention we look to his acts and his omissions, and their effect upon those who have relied upon them. As long as the public maintained a graded and well drained way over the appellant's ground, supplying a good street for those who might go to the depot on business with the company, the appellant was willing to quietly accept the labor and expense bestowed, but, after thirty years of such benefits, bestowed in the belief that the way was a public street, would it not constitute a wrong to permit the appellant to deny that the way was such public street? Does the fact that such company enjoyed the benefits of the improved way affect the conclusion that there was an intention to dedicate? These questions suggest their own answers.

It is urged also that it was not found that the adverse use was while the owner was free from disabilities and in a position to resist such use. Disabilities are not, in the first instance, presumed, and the appellant instituted this suit to enjoin public officers from performing official acts, such acts always being favored with the primary presumption of regularity and legal support. In the absence, therefore, of any finding on the subject, presumptions would be in-

dulged against the appellant. See *Faust* v. *City of Huntington*, 91 Ind. 493.

Nor do we observe any force in the proposition that the evidence showed that during a part of the period of adverse user the owner of the land was out of possession, and the railway was operated by a tenant under a lease for ninety-nine years. Such a tenancy can certainly be no bar to an acquirement by the public of an easement by implied dedication. It could not preclude a condemnation, and certainly would not repel the presumption of an ancient dedication.

By supplemental complaint it was shown that the proposed paving had been completed, and it was sought to enjoin the collection of the assessment against the appellant. This constituted a collateral attack upon the proceedings of the board of trustees, and, under the well established rule, can be maintained only by the affirmative disclosure of some act or omission rendering the assessment invalid for the want of jurisdiction, and it cannot be sustained for any mere irregularity in the proceedings. *McEneney* v. *Town of Sullivan*, 125 Ind. 407; *DePuy* v. *City of Wabash*, 133 Ind. 336; *Robinson* v. *City of Valparaiso*, 136 Ind. 616; *City of Indianapolis* v. *Consumers' Gas Trust Co.*, 140 Ind. 246; *Kizer* v. *Town of Winchester* 141 Ind. 694.

The infirmity, in such case, must be disclosed by the record. *DePuy* v. *City of Wabash, supra; Shoemaker* v. *South Bend, etc., Co.*, 135 Ind. 471; *Bailey* *v. Rinker*, 146 Ind. 130; *Thompson* v. *Harlow, ante*, 450.

One objection urged against the proceedings of the board is that they do not appear to have been had upon petition by property owners. Petition is not indispensable, as such improvements are authorized, upon a vote of two-thirds of the membership of the board, without a petition. *McEneney* v. *Town of Sullivan, supra; DePuy* v. *City of Wabash, supra.*

It is further objected that the recital in the ordinance directing the improvement, that the same was passed by a two-thirds vote of the board, was not evidence of the fact of such vote, and was an insufficient record of the fact. It has been decided that such a recital amounts to a finding upon the question, and that such finding is conclusive. *City of Indianapolis* v. *Consumers Gas Trust Co., supra,* and authorities cited. See, also, *Balfe* v. *Lammers,* 109 Ind. 347, where it is held that the question as to whether the yeas and nays were taken can only be made by appeal, or direct attack.

The ordinance directing the improvement included several streets, and the street here in question was described as "Railroad street," extending from Jackson street to Goldsborough street. Prior to the passage of said ordinance, another ordinance had been passed declaring that the street or way extending from Jackson street to Goldsborough street be named and known as "Railroad street." No other street extended from one of the named streets to the other. The findings and evidence particularly locate and describe this street. It is now urged that in the proceedings for the improvement of Railroad street there was no means of knowledge by property owners or bidders, of the proposed improvement. The general description, under the circumstances, was sufficient.

Other questions as to the letting of the contract; that the price at which it was let was so much per square yard; that the letting was in connection with other streets, etc., have been urged. All of these we regard as not presenting any question going to the validity of the action of the board, and, at most, but irregularities, subject only to direct attack.

It is insisted also that the evidence in numerous re-

spects does not sustain the findings of the court. We have examined the evidence, and are of the opinion that it fairly supports each finding questioned.

No error appearing on the record, the judgment is affirmed.