Baltimore, etc., R. Co. *v.* City of Seymour.

BALTIMORE AND OHIO SOUTHWESTERN RAILWAY
COMPANY *v.* THE CITY OF SEYMOUR ET AL.

[No. 18,629.  Filed January 5, 1900.]

DEDICATION.—*Prescription.—Evidence.—Railroads.*—In an action by a railroad company to restrain a city from paving a portion of its right of way claimed by defendant as part of a street, the city introduced in evidence a plat of the land filed by the owner showing city blocks laid off on either side of the railroad with an open space between the blocks and the line of the railroad with the words "Railroad Avenue" and the number 50 on one side of the line, and "O. & M. Railroad" and the number 63 on the other side. The width of the right of way was not indicated on the plat. It was shown that the owner of the land thereafter deeded to the railroad company an eighty-foot right of way through such land "as staked, marked, surveyed, and located;" that shortly after making the plat, and before executing the deed to the company, a public auction was held of lots abutting on Railroad avenue but there was no evidence that the bidders ever completed their purchases, or that the right of way was represented to them to be of less degree than absolute or of less width than eighty feet. *Held,* that the evidence failed to show a dedication of any part of the eighty-foot right of way as a street, either by grant or by acts *in pais.  pp. 18–21.*

SAME.—*Prescription.—Public Use.*—The fact that a strip of railroad right of way within the limits of a city, used by the railroad company as a freight yard, was traveled upon by persons who had no immediate business with the railroad company as well as by persons in receiving and delivering their freight, furnishes no evidence of title in the city.  *pp. 21–23.*

SAME.— *Prescription.— Property Once Dedicated to Public Use.— Evidence.*—In the trial of an action by a railroad company to enjoin a city from paving a portion of its right of way claimed by defendant as part of a street, it was error to admit in evidence the proceedings of the common council had in the year 1867 in reference to sidewalks and street gradings thereon, since cities had no power prior to 1891 to seize property previously taken for a public use.  *p. 23.*

From the Jennings Circuit Court.  *Reversed.*

*E. W. Strong, O. H. Montgomery, C. W. McMullen* and *H. D. McMullen,* for appellant.

*W. K. Marshall* and *J. M. Lewis, Jr.,* for appellees.

BAKER, J.—Appellant's complaint alleges in substance that appellant is the owner of a parcel of ground forty feet wide on each side of the center of its main track through the city of Seymour, and that it and its predecessor, the Ohio and Mississippi Railway Company, have been in the continuous possession thereof for railroad purposes since 1852; that in May, 1897, the city, under an ordinance, contracted with its co-appellee, the Capitol Paving and Construction Company, to pave a portion of the right of way, about 700 feet in length and of the full width of eighty feet except the ground covered by the tracks; that the threatened seizure is unlawful because the city has no title to nor interest in any part of the right of way. A temporary restraining order was asked, and the final relief prayed for was a perpetual injunction. Each appellee filed a general denial. The city also filed a separate answer in one paragraph, averring an express dedication and a prescriptive right, claiming exclusive control of the ground in question except "so much thereof as is now occupied by plaintiff's railroad tracks", and asserting the legality of its proceedings. There was a general finding and judgment for appellees. The error assigned is the overruling of the motion for a new trial. The principal question presented is the sufficiency of the evidence to sustain the finding.

The evidence is substantially without conflict. In examining it, all legitimate inferences must be drawn in favor of appellees and against appellant.

Appellant proved that in 1852 there was no town where Seymour now lies; that the Jeffersonville, Madison and Indianapolis railroad then ran north and south through the site of the present city; that the vacant land was then owned by one Shields; that in 1850 a preliminary survey of the Ohio and Mississippi railroad was made from Cincinnati to St. Louis, crossing the J. M. & I. on the lands of Shields; that in 1851 the final survey was made and the center line of the main track was marked by stakes 100 feet apart; that in the summer and fall of 1852 work on marking and pre-

paring the grade had begun on Shields's land; that on May 24, 1853, Shields deeded to the O. & M. Company an eighty foot right of way through his lands on the line "as staked, marked, surveyed and located"; that the main track was constructed on the center line as surveyed, and ever since has been maintained at the same place; that appellant succeeded to the title of the O. & M. Company; that appellant and its predecessor have continuously operated a railroad over the ground deeded by Shields, and have maintained thereon, in addition to the main track, a siding, telegraph poles, ditches, platforms, depot buildings, watch-houses, water-cranes, etc.; that appellees were asserting the claims and threatening to do the things set forth in the complaint and the city's special answer. This made out a *prima facie* case for appellant.

The court admitted no evidence in support of the defense of express dedication. A record of a plat, made by Shields, was offered as proof of express dedication, and was held incompetent for that purpose on the ground that the plat was not executed with the formalities entitling it to be recorded, but was admitted in support of the defense of prescriptive right or dedication implied from acts *in pais.* Appellees contend that the plat was properly executed, and that the record thereof should be considered for all purposes. It is not necessary to decide this, because, on the assumption that the plat was properly executed, it does not prove an express dedication of the lands in controversy. Appellees are seeking to pave a distance of two blocks, one to the east and one to the west of the J. M. & I. crossing. The original plat of Seymour was not signed by Shields. The recorder of Jackson county certified that Shields acknowledged the execution of the plat before him on November 27, 1852. When it was recorded does not appear. By this plat it is shown that blocks were laid off north of the O. & M. railroad, but none south. On October 19, 1858, Shields signed the original plat with certain additions thereto and acknowledged the whole. By this it appears that blocks south of the O.

& M. and west of the J. M. & I. were added, but none east. Assume that the plat in this transcript was duly executed and recorded on November 27, 1852. It shows the two railroads, crossing substantially at right angles. Three city blocks are shown, one in the northeast angle marked "A", one in the northwest marked "K", and one in the southwest marked "O". The space in the southeast angle is open and unplatted. At the east side of block "A" appears Ewing street, extending south to, but not across or beyond, the O. & M. right of way. At the west side of blocks "K" and "O" is Chestnut street, extending across the O. & M. right of way. Between blocks "A" and "K" is an open space, in the center of which is a dotted line running north and south. On each side of this dotted line, and between it and the block lines, is a solid line parallel with the dotted line. These three lines are extended on beyond the O. & M. and past block "O". The O. & M. is marked in the same manner and as being apparently of the same width as the J. M. & I. Between blocks "K" and "O" is an open space, in the center of which is a dotted line running east and west. On each side of this dotted line and between it and the block lines, is a solid line parallel with the dotted line. These three lines are extended on beyond the J. M. & I. and past block "A". Just above these three lines are written the words "Railroad avenue", and just below "O. & M. railroad". The distances between these three lines are not given. Between them and block "K" is the number fifty; between them and block "O" is sixty-three. No scale appears upon the plat—no statement that it is drawn to any scale—no explanation as to the character or width of the J. M. & I. or of the O. & M. right of way. But the nature and extent of the O. & M. right of way, indicated indefinitely by Shields upon his plat, was made certain by his deed to the company. *City of Noblesville* v. *Lake Erie, etc., R. Co.*, 130 Ind. 1. Plainly Shields could not thereafter claim that he had dedicated as a street any part of the eighty foot

right of way. The first conveyance of any lot abutting on "Railroad avenue" was made by Shields on October 24, 1854. That purchaser, and all others of later date, had notice from the plat itself that the O. & M. had some kind of a right of way, and of some width, at the place in question. If they had gone upon the ground, they would have seen that the company was in possession of some width of territory. And possession of part, under title or color of title, is possession of the whole.

There was testimony for appellees by one who was a spectator that Shields, shortly after making the plat in November, 1852, and before executing the deed to the company in May, 1853, held a public auction of town lots, at which three or four abutting on "Railroad avenue" were struck off. But there is no evidence that these bidders ever completed their purchases; that they bid believing that the O. & M. right of way, which was indicated on the plat, and part of which was occupied by the company, was less than eighty feet; that Shields or the company represented the right of way to be of less degree than absolute or of less width than eighty feet; that they did not have actual notice from Shields and the company that the right of way, marked on the plat without any designated width, was actually eighty feet upon the ground. The plat and the indicia on the ground made it their duty to inquire.

There is no evidence of acts by Shields other than his making the plat, his executing the deed to the company for the right of way, and his conveying the lots to purchasers, as stated. So, neither by grant, nor by acts *in pais*, did Shields dedicate as a street any part of the ground in controversy.

There is no claim that appellant or its predecessor in title ever made or attempted to make an express dedication of any part of its right of way as a street. The remaining question is whether or not the evidence affords any basis for the claim that the city has a prescriptive right to hold as a

public street all the right of way except the portion occupied by the tracks.

There is no evidence whatever of any public use of that part of the right of way which lies east of the J. M. & I. crossing and south of the main track.

West of the J. M. & I. and south of the main track, a side-track extending past block "O" has been maintained from the beginning. From the south side of the main track to the south side of the side-track is fifteen feet. Ever since the road was built, the company has placed its freight cars on this side-track, and persons who had freight to send or receive have come with teams to load and unload the cars, using the portion of the right of way south of the side-track for a freight yard to drive in upon. Between the south line of the right of way and the north line of the lots in block "O" is a space of twenty-three feet upon the ground. By the plat and by use, this space is a public highway. But the public, as well as persons having business with the company, drove over that part of the right of way which was used for the purpose of loading and unloading cars. This use, however, was neither exclusive nor adverse, and furnishes no evidence of title in the city. *Shellhouse* v. *State*, 110 Ind. 509; *Nowlin* v. *Whipple*, 120 Ind. 596, 6 L. R. A. 159; *Pennsylvania Co.* v. *Plotz*, 125 Ind. 26.

Between the north line of the right of way and the south line of the lots in blocks "A" and "K" is a space of ten feet on the ground. North of the main track, the company has maintained a ditch, a line of telegraph poles, a water-crane, a tool house, and for a considerable time a platform that crossed to the north side of the right of way. Some of the structures and appliances on the right of way have been moved from time to time as the company saw fit. That others than those who had business with the company traversed part of the right of way, and that mud-holes were occasionally filled up by the city employes, are not inconsistent with the retention of title by the company. A mere

permissive use, concurrent with the owner's, is not indica-
tive of a prescriptive right.

A large part of the record is taken up with evidence of
the number and character of buildings erected on lots abut-
ting on the open spaces between the block lines and the right
of way, and of the amount of business transacted therein.
This was irrelevant.   One need not object to what he can
not stop.

To admit in evidence the common council's proceedings
of September 12, 1867, in reference to sidewalks and street
grading on "Cincinnati and St. Louis avenue" (which is a
later name for "Railroad avenue"), was erroneous.   It
afforded no evidence of a right or of a claim of right to the
railroad land.   The right of way was indicated on the
original plat of the city.   "Railroad avenue" was outside of
this.   Prior to 1891 (Acts 1891 p. 122), cities had no au-
thority to seize property previously taken for a public use.
*City of Seymour* v. *Jeffersonville, etc., R. Co.*, 126 Ind. 466.
There was no evidence that the company had notice of the
proceedings, and it was not bound to take notice of them as
they did not profess in any way to encroach upon the right
of way.

The facts in this case differ essentially from those in
*Pittsburgh, etc., R. Co.* v. *Town of Crown Point*, 150 Ind.
536.   There, it was found that a portion of the station
grounds, on the opposite side of the depot from the tracks,
of the width of thirty feet, had been marked out, ditched,
graded and worked by the town authorities for thirty years,
and throughout that time the public's possession of the
ground as a street had been open, notorious, continuous,
adverse and exclusive.

It was error to receive oral testimony in regard to the
meaning of the plat.   *Miller* v. *City of Indianapolis*, 123
Ind. 196.

Judgment reversed, with directions to sustain the motion
for a new trial.